UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CERESTAR USA, INC., )<br>)<br>    Plaintiff  )<br>)<br> vs.      )<br>)<br>SAFWAY STEEL PRODUCTS, INC., )<br>)<br>    Defendant ) | CAUSE NO. 3:02-CV-123 RM |

OPINION and ORDER

This cause is before the court on the motion of Safway Steel Products, Inc. for summary judgment on the remaining claims of the second amended complaint of Cerestar USA, Inc. The underlying facts of the case are not in dispute: the parties' claims relate to work done by Safway at Cerestar's Hammond, Indiana facility in November 1999, Safway employee Gregory Messer's fatal injury from a fall at the site, and the resulting wrongful death action filed by Mr. Messer's estate against Cerestar in the Lake County Circuit Court. Safway argues that it is entitled to summary judgment on Cerestar's claims for breach of contract and failure to procure insurance because even if Cerestar's Purchase Order No. 136777 and Supplementary Terms and Conditions document governed Safway's work at the time of Mr. Messer's accident, Cerestar isn't entitled to the relief it seeks. Cerestar has filed its response, Safway its reply, and the motion is ripe for review.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the non-moving party even when the record as a whole is viewed in the light most favorable to the non-moving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

RELEVANT CONTRACT PROVISIONS

For purposes of this motion only, the parties agree that Cerestar's Purchase Order No. 136777 and Supplementary Terms and Conditions document governed the work at the Hammond facility. Cerestar claims Safway was obligated to procure insurance for itself and for Cerestar to cover the work here at issue pursuant to paragraph 17 of the Supplementary Terms and Conditions document, which reads as follows:

> 17. <u>Insurance</u>. [Safway] will maintain such insurance as is required on the Purchase Order and such additional insurance as may be necessary to adequately protect [Safway] and [Cerestar] from all claims under (a) Worker's Compensation laws, (b) public liability, (c) property damage and (d) all other claims for damages, including personal injury and death which may arise from operations under this contract. Certificates of insurance will be filed with [Cerestar] and will be subject to its approval for adequacy of protection before [Safway] starts any work to be performed under this contract.

Paragraph 19 of Purchase Order No. 136777 also addresses the issue of insurance and provides that

> (a) In the event that [Safway's] obligations hereunder require or contemplate performance of services by [Safway's] employees, or persons under contract to [Safway], to be done on [Cerestar's] property or property of [Cerestar's] customers, [Safway] agrees that all such work shall be done as an independent contractor and that the persons doing such work shall not be considered employees of [Cerestar]. [Safway] shall maintain all necessary insurance coverages, including public liability and Worker's Compensation insurance and, before beginning the performance of this Purchase Order, [Safway] shall furnish [Cerestar] with the following where indicated:
> (1) Certificates of the Industrial Board of Indiana to the effect that [Safway] is in compliance with the insurance requirements of the Indiana Workmen's Compensation Act and the Indiana Occupational Disease Act.

   (2) Certificates of insurance covering the following perils and in the following minimum limits:
    1. Comprehensive general liability $100,000 each person - $300,000 each accident
     Property Damage - $50,000
    2. Automobile and truck:
     Bodily Injury - $100,000 each person - $300,000 each accident
     Property Damage - $50,000
    3. Products liability:
     Bodily Injury
     Property Damage
       * * *

   (c) [Safway] shall indemnify, hold harmless and defend [Cerestar], its successors and assigns, agents and employees, from and against any and all claims, liabilities, losses, damages or expenses arising out of or on account of any such work, including without limitation all personal injuries to, or death of any person or persons, and any and all property damage, caused by [Safway], its agents or employees, or caused by any persons under contract to [Safway], or such person's agents or employees during the course of the performance or execution of this contract.

## DISCUSSION

In support of its summary judgment motion, Safway argues, first, that the language of Purchase Order No. 136777 and the Supplementary Terms and Conditions imposed no duty upon Safway to procure insurance covering Cerestar's own negligence; next, even if Safway had a duty to procure such insurance, Cerestar waived any right it had to enforce the insurance provisions of the documents; and, next, the effective dates of the documents (December 3, 1999, when the Purchase Order was issued, and December 10, 1999, when the Supplementary Terms and Conditions document was signed) made it impossible for Safway to secure an insurance policy that would have provided retroactive

4

coverage for liability arising out of Mr. Messer's accident, which occurred on November 10, 1999. Because the court finds Safway's first argument dispositive, the issues of waiver and retroactivity need not be addressed.

Safway argues that under the terms of the Cerestar documents, Safway had no duty to procure insurance covering Cerestar for liability incurred in the underlying Messer wrongful death action, that is, insurance covering Cerestar for Cerestar's own negligence. Had Cerestar intended Safway to procure insurance covering Cerestar, Safway says, specific language in the contract was necessary. Safway insists Cerestar "could have and should have unequivocally required Safway to name [Cerestar] as an insured," [Reply, at 7], but did not do so. According to Safway, nothing in the language of the Purchase Order or the Supplementary Terms and Conditions requires Safway to name Cerestar as a co-insured, additional insured, or joint insured on any of Safway's insurance policies, and, so, the documents are insufficient to impose any such duty on Safway.

Safway relies on United Consulting Engineers v. Board of Comm'rs of Hancock County, 810 N.E.2d 351 (Ind. Ct. App. 2004), to support its position. In that case, Hancock County officials hired United Consulting Engineers ("UCE") to provide engineering services on a bridge replacement project. During the bridge work, Kyle Vandagriff drove his car through the construction site and was killed. Mr. Vandagriff's estate sued Hancock County, UCE, and others claiming the defendants were negligent in failing to take appropriate safety measures to protect motorists in the construction zone; Hancock County then filed a cross-claim

5

against UCE alleging UCE breached the parties' contract, which, according to the County, required UCE to defend, indemnify, and purchase insurance for the County.

The contract between UCE and Hancock County, as drafted by County officials, provided, in pertinent part, that

> [UCE] shall be responsible for all damage to life and property caused by errors or omissions of [UCE], its subcontractors, agents or employees in connection with the services rendered by [UCE] pursuant to this contract. [UCE] shall indemnify, defend, and hold harmless [Hancock County] from any liability due to loss, damage, injuries, or other casualties of whatever kind, which, directly and independently of all other causes, arise out of, or result from, the negligence of [UCE], its agents or employees, in performing the services that are required of [UCE] by this contract.

810 N.E.2d at 352. The court determined that this language obligated UCE to be responsible for all damages arising from the services rendered by UCE, including damages caused by its subcontractors, agents, and employees, and required UCE to defend the County from damages arising from UCE's negligence and UCE's negligence alone. The court stated that "[n]othing in [that paragraph] or in any other part within the four corners of the contract indicates that UCE is responsible for defending the County against its own negligence." 810 N.E.2d at 354. Contrasting the Hancock County/UCE contract to the contract in Exide Corp. v. Millwright Riggers, Inc., 727 N.E.2d 473 (Ind. Ct. App. 2000), which contained a specific requirement that Exide be named as a co-insured,[1] the court

---

[1] Exide v. Millwright Riggers involved a contract between Exide and contractors hired by Exide, which provided that "Contractor shall at its own expense provide evidence of insurance

(continued...)

6

reasoned that because Hancock County, as drafter of the contract, didn't include a specific requirement that UCE name the County as a co-insured, such a requirement wasn't within the intent of the parties when entering into their agreement. 810 N.E.2d at 355.

Safway asserts that its contract is like the UCE/Hancock County contract in that the Cerestar documents contain no specific requirement that Safway name Cerestar as a co-insured. Safway says that a plain and reasonable reading of the insurance provisions of the Cerestar documents confirms that Safway was required to insure against any and all liabilities resulting from its own acts, which, in turn, would protect Cerestar from those same liabilities. Safway maintains the terms of Cerestar's documents obligate Safway to maintain workers' compensation insurance, public liability insurance, property damage insurance, and general liability insurance for itself, so

> if Safway caused property damage to Cerestar's building, Safway's property damage policy would provide coverage to Safway (thereby protecting Safway <u>and</u> Cerestar), or if one of Safway's employees was injured on the job, Safway's workers' compensation policy would provide coverage (thereby protecting Safway <u>and</u> Cerestar), or if Safway's conduct caused injury to a non-Safway employee, Safway's general liability policy . . . would provide coverage to Safway (thereby protecting Safway <u>and</u> Cerestar).

---

[1](...continued)
reasonably satisfactory to Exide, and naming Exide as a co-insured, with respect to any liability which may accrue from or during the work performed by Contractor . . . in connection with this contract." 727 N.E.2d at 481. The court held that that language "unambiguously states" that the contractors must obtain insurance on Exide's behalf, "to cover *any* liability which may accrue from or during the work performed by [the contractors]." 727 N.E.2d at 482.

Deft. Memo., at 9. Safway says its reading of the "to protect Safway and Cerestar" language gives meaning to all the words and is a reasonable interpretation of that phrase. Safway concludes that the contract provisions required Safway to secure insurance to cover its own negligence only.

Cerestar insists Indiana law doesn't require any magic language to create a contractual duty to insure. According to Cerestar, the <u>United Consulting</u> and <u>Exide</u> cases "require only that the court apply basic principles of contract interpretation" to the language of the Purchase Order and Supplementary Terms and Conditions. [Resp., at 7.] Cerestar says paragraph 17 of the Supplementary Terms and Conditions "broadly requires Safway to procure such 'additional insurance' as necessary to 'protect' Cerestar from 'public liability . . . property damage [and] all other claims for damages, including personal injury and death which may arise from operations under this contract.'" [Resp., at 7.] Cerestar claims "it is clear that the plain meaning of the terms require[s] that Safway 'protect' Cerstar by making Cerestar an insured under [Safway's] policy." [Resp., at 7.]

When interpreting a contract under Indiana law, which the parties agree governs their contract, the court must

> consider the whole document, not just the disputed language. Construction of contract language that would render any words, phrases, or terms ineffective or meaningless should be avoided. Courts should presume that all provisions included in a contract are there for a purpose and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions. Furthermore, in its interpretation of the contract, the court should attempt to determine

8

> the parties' intent when entering a contract from their expressions within the four corners of the written instrument.

City of Lawrenceburg v. Milestone Contractors, L.P., 809 N.E.2d 879, 883 (Ind. Ct. App. 2004) (citations omitted). If a contract is uncertain in its terms and the meaning can be determined only through the use of extrinsic evidence, contract interpretation is a matter for the factfinder; but if the ambiguity arises because of the contract language and consideration of extrinsic facts isn't necessary, contract construction is purely a question of law to be determined by the court. McLinden v. Coco, 765 N.E.2d 606, 612 (Ind. Ct. App. 2002).

Consideration of extrinsic facts is unnecessary to interpret the Purchase Order and the Supplementary Terms and Conditions. The language here at issue is the requirement, in paragraph 17 of the Supplementary Terms and Conditions, that Safway maintain insurance "to protect Safway and Cerestar." The court agrees with Cerestar that those words were included for a purpose, but based on a consideration of the contract documents as a whole, the court can't agree with Cerestar's conclusion that the phrase requires Safway to secure insurance covering Cerestar's negligence or naming Cerestar as a co-insured.

Interpretation of the parties' contract requires the court to harmonize the various parts of the contract "so that no provision is deemed conflicting with, repugnant to, or neutralizing of any other provision." George S. May Intern. Co. v. King, 629 N.E.2d 257, 261 (Ind. Ct. App. 1994) (citations omitted). Specific

provisions of the Purchase Order and the Supplementary Terms and Conditions require Safway to assume liability for

– all claims, losses, penalties, damages, and expenses arising from (a) any infringement action relating to the manufacture, sale, or use of any Safway goods, (b) any defects in goods supplied by Safway, (c) breach by Safway of any warranties, (d) Safway's failure to timely deliver the goods purchased, and (e) Safway's failure to conform the goods supplied to the requirements of any law, regulation, or ordinance [Purchase Order, ¶ 8];

– all expenses and losses incurred by Cerestar as a result of Safway's failure to furnish the entire quantity of goods under the contract [Purchase Order, ¶ 11];

– "all claims, liabilities, losses, damages or expenses arising out of or on account of any work, including without limitation all personal injuries to, or death of, any person or persons, and any and all property damage, caused by [Safway], its agents or employees, or caused by any persons under contract to [Safway], or such person's agents or employees during the course of the performance or execution of this contract" [Purchase Order, ¶ 19(c)];

– all expenses and costs arising from Safway's negligence for replacing defective work, damage to property, and disposal of

10

materials wrongly supplied [Supplementary Terms and Conditions, ¶ 8];

– all personal injuries and property damage caused by the acts or negligence of Safway, its agents, and employees [Supplementary Terms and Conditions, ¶ 10];

– all injuries and damage caused by Safway and its agents and employees to any other vendor or contractor [Supplementary Terms and Conditions, ¶14];

– all costs resulting from Safway's performance of any work that is contrary to any law, ordinance, rule or regulation [Supplementary Terms and Conditions, ¶ 18]; and

– all loss or damage claims against Cerestar arising from any defects in Safway's goods [Supplementary Terms and Conditions, ¶ 20].

Those provisions require Safway to be responsible for acts of the company and its agents and employees. To read two words ("and Cerestar") in one provision of the contract documents as requiring Safway to be responsible for insuring Cerestar for Cerestar's own negligence would be in conflict with the remainder of the contract, which requires Safway to be responsible for, and insure against the negligence of, its own actions and those of its agents and employees.

"When a contract contains general and specific provisions relating to the same subject, the specific provision controls." George S. May Intern. Co. v. King,

11

629 N.E.2d 257, 261 (Ind. Ct. App. 1994) (citations omitted). Paragraph 17 of the Supplementary Terms and Conditions generally requires Safway to maintain insurance to protect Safway and Cerestar against claims for workers' compensation, public liability, property damage, and all other damage and personal injury. The specific provision of the contract relating to insurance – paragraph 19 of the Purchase Order – requires Safway to secure workers' compensation and public liability insurance, comprehensive general liability insurance (minimum limit of $100,000 each person, $300,000 each accident), property damage insurance (minimum limit of $50,000), automobile and truck insurance for bodily injury (minimum limit of $100,000 each person, $300,000 each accident) and property damage (minimum limit of $50,000), and product liability insurance for bodily injury and property damage (no minimums listed), and to "indemnify, hold harmless, and defend" Cerestar from claims for personal injury, property damage, or other losses or expenses caused by Safway, its agents or employees, or any other person under contract to Safway.[2] No provision in the Purchase Order or the Supplementary Terms and Conditions addresses Safway's responsibility for, or duty to assume liability for, negligent acts of Cerestar, and nothing in the documents can be read as requiring Safway to secure insurance

---

[2] Although the term insurance isn't mentioned in Paragraph 10 of the Supplementary Terms and Conditions, the language of Paragraph 10 reaffirms the provisions of Purchase Order Paragraph 19 and reiterates Safway's duty to be responsible for its own actions. Paragraph 10 specifies that Safway is to assume "complete responsibility and liability for any and all damage or injury of any kind or nature whatsoever to all persons (whether employees of [Safway] or otherwise) and to all property, caused by, resulting from or arising out of the negligence or acts of [Safway] and its agents and employees."

covering Cerestar's negligence. The documents' clear language requires Safway to be responsible for, accept any resulting liability from, and secure insurance to protect Safway and Cerestar for Safway's own acts and the acts of its agents and employees.

Like the contract at issue in <u>United Consulting Engineers v. Hancock County</u>, Cerestar's contract documents contain no language requiring Safway to name Cerestar as a co-insured. Too, Cerestar "had enough control over the provisions that were included in the [Purchase Order and Supplementary Terms and Conditions documents] to specifically include a requirement that [Safway] name it as a co-insured had that been the intent of the parties." 810 N.E.2d at 355. Cerestar didn't do so, and the language of the documents can't reasonably be interpreted as including such a requirement. S*ee* <u>George S. May Int'l Co. v. King</u>, 629 N.E.2d 257, 260 (Ind. Ct. App. 1994) (court "may not rewrite [a contract] to suit one party, but must apply the plain and obvious meaning of the language of the entire contract"). Safway is entitled to summary judgment on the remaining claims of Cerestar's second amended complaint.

## CONCLUSION

The motion of Safway Steel Products, Inc. for summary judgment on the remaining claims of the second amended complaint [docket # 163] is GRANTED, and the clerk is ordered to enter judgment accordingly.

SO ORDERED.

ENTERED:   June 20, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court